UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| David Murphy, | Case No.: 2:21-cv-00092-CDS-DJA |
| Petitioner | **Order Denying Respondents' Motion to Dismiss** |
| v. | |
| Calvin Johnson, et al., | [ECF No. 44] |
| Respondents | |

In his amended 28 U.S.C. § 2254 habeas corpus petition, David Murphy challenges his conviction by jury trial of seven counts, including second-degree murder, burglary, and home invasion in the Eighth Judicial District Court, Las Vegas, Nevada (Clark County). ECF No. 21. The convictions stemmed from a botched robbery of a home, which resulted in the death of one resident. Respondents move to dismiss the petition as untimely. ECF No. 44. They also argue that the three grounds are unexhausted. Because the court concludes that the petition is timely; grounds 1 and 2 are exhausted; and defers a decision on whether ground 3 is procedurally defaulted to the adjudication of the petition on the merits, the respondents' motion to dismiss is denied.

I.   **Background**

In October 2016, a jury convicted Murphy of conspiracy to commit robbery (count 1); burglary while in possession of a deadly weapon (count 2); home invasion while in possession of a deadly weapon (count 3); two counts of attempt robbery with a deadly weapon (counts 4 and 5); murder with a deadly weapon (count 6); and attempt murder with a deadly weapon (count 7). Ex. 91.[1] The state district court sentenced Murphy to an aggregate term of 23 years to life. Ex. 95. Judgment of conviction was entered on December 2, 2016. Ex. 96. The Nevada Court of

---

[1] Exhibits to respondents' motion to dismiss, ECF No. 44, are found at ECF Nos. 30–43. Petitioner's exhibits are found at ECF No. 58, and the court refers to them as Pet. Ex.

Appeals affirmed his convictions and affirmed the denial of his state postconviction petition. Exs. 118, 140.

Murphy dispatched his federal habeas corpus petition for mailing about January 12, 2021. ECF No. 9 at 23. The court granted his motion for counsel, and he filed an amended petition through his counsel, the Federal Public Defender (FPD), on January 17, 2023. ECF No. 21. He now presents three grounds for relief:

> Ground 1: The state district court violated Murphy's Fifth, Sixth, and Fourteenth Amendment rights when it refused to sever his trial from his co-defendant Jorge Mendoza's trial.
>
> Ground 2: The state district court violated his Fifth, Sixth, and Fourteenth Amendment rights when it allowed Summer Rice to testify notwithstanding the prosecution's late disclosure of Rice as a witness.
>
> Ground 3: Trial counsel was ineffective for waiving cross-examination of Mendoza in violation of Murphy's Fifth, Sixth, and Fourteenth Amendment rights.

ECF No. 21 at 11–18.

Respondents now move to dismiss the petition as untimely; alternatively, they argue that the three grounds are unexhausted. ECF No. 44.[2]

II.   **Legal Standards & Analysis**

   A.  Timeliness—AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Where a defendant fails to seek direct review of his judgment of conviction before the state appellate court, the one-year period of limitations begins to run thirty days after the entry of the judgment of conviction. NRAP 4(b)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149–

---

[2] Murphy opposed, and respondents replied. ECF Nos. 57, 61.

150 (2012). A properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2). Here, the parties do not dispute that Murphy's AEDPA deadline was filed on or about July 27, 2020, and that he did not mail his petition until on or about January 12, 2021.[3] So unless the limitations period should be equitably tolled, Murphy's original and amended petition are untimely.

### B. Equitable Tolling

Murphy argues that he is entitled to equitable tolling of the statute of limitations. ECF No. 57 at 2–9. A petitioner may be entitled to equitable tolling of the AEDPA limitations period if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting prior authority). However, an "external force"—not mere oversight, miscalculation, or negligence—must have caused the untimeliness. *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quotation omitted). In addition, a causal relationship must exist between the extraordinary circumstance and the late filing. *E.g., Bryant v. Arizona Atty. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). The Ninth Circuit has held that a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time for filing his claim in federal court." *Smith v. Davis* 953 F.3d 598–599 (9th Cir. 2020).

Here, after 135 days of the AEDPA limitations period had elapsed, Murphy filed a pro se state postconviction petition in October 2018. Ex. 122. The state district court denied his motion for appointment of counsel. *See* Ex. 140. Murphy asserts that when he was placed in administrative segregation at Ely State Prison ("ESP") in 2018, prison personnel lost two of his

---

[3] *See also* Exs. 118, 122, 140; ECF No. 44 at 4–5; ECF No. 57 at 2.

four legal boxes. *See* Ex. 144, Motion for Production of Documents at 5. His legal filings, including his state court appeals and the decisions on those appeals were lost. He filed a motion in September 2019 in state district court requesting a copy of his legal files. Ex. 137. The court denied the motion because it was not properly served on the State or on his appellate counsel. Ex. 139. Murphy unsuccessfully tried to contact his former attorney, Casey Landis, to get his file. *See* Ex. 144 at 5. Nevada Department of Corrections ("NDOC") transferred Murphy to High Desert State Prison ("HDSP") for surgery on his left shoulder in 2019 and immediately placed him in administrative segregation. Pet. Ex. 1 at ¶ 3. He did not have access to the law library. *Id*. at ¶ 7.

Murphy further states that he has diabetes that was uncontrolled from 2019–2022. He says he regularly tested his blood sugar level and repeatedly asked for proper insulin treatment but did not receive it. He attached a February 2020 inmate request form where he wrote: "My blood sugar is staying high average mid-300. I need to be tested and receive insulin twice a day not just once as I am currently." Pet. Ex. 3. Murphy provides a November 2021 letter from the medical provider through whom he was scheduled for shoulder replacement surgery that states that the surgery, scheduled for the next day, was cancelled due to his uncontrolled diabetes. Pet. Ex. 4. He asserts that his consistently high blood sugar level caused headaches, irritability, and fatigue that made it almost impossible to concentrate on hand-writing his petition with his disabled hand.[4]

He wrote to the state district court in April 2020, again stating that ESP had lost his legal materials and that he could not reach his prior counsel for a copy of his file. Pet. Ex. 2. He asked the court to explain how he could obtain the files. He filed another motion in July 2020 requesting copies of his legal files and again stating that he was unable to contact his former

---

[4] According to Murphy years earlier he was in a serious motorcycle accident that left his right forearm and right hand permanently disfigured and caused significant injury to his left shoulder. His 2016 Presentence Investigation Report indicated that Murphy had reported a 2003 motorcycle accident left him with limited mobility in his right arm and left shoulder and an artificial hip. Ex. 93 at 3. He is right-handed. He also referenced what he referred to as his severe physical handicap when he sought counsel in his state postconviction proceedings. *See, e.g.*, Ex. 125; Ex. 140.

4

counsel. Ex. 144. Court minutes on that motion state that Landis had become inactive since representing Murphy at trial and on appeal and had moved to Michigan. Ex. 146. They also reflect that the district court law clerk had tried to contact Landis and was awaiting a response. The court denied the motion. Ex. 148. Finally, Murphy alleges that he contracted Covid-19 in October 2020, before a vaccine was available. His diabetes put him at risk of serious illness, and he was very ill for months. He never received medical treatment.

Respondents argue that Murphy doesn't provide support for his assertion that he could not access the law libraries at ESP and HDSP because he was in administrative segregation. ECF No. 61 at 4–7. They point out that Murphy filed his pro se state habeas petition in 2018 apparently without much of his file, though it is unclear when in 2018 his legal materials were lost. Respondents note that Murphy offers no support for his claim that he contracted Covid-19 and was ill for months. They broadly argue that Murphy fails to demonstrate that the lack of access to his legal files, his medical impairments, and/or contracting Covid-19 were extraordinary circumstances that prevented him from filing a timely federal petition during the entire period—before and after his timely state postconviction litigation—that the AEDPA statute of limitations was running. *Smith*, 953 F.3d at 599–600.

Equitable tolling determinations may "involve the confluence of numerous factors beyond the prisoner's control." *Lott v. Mueller*, 304 F.3d 918, 924 (9th Cir. 2002). The court concludes that this is the case here. The court finds most persuasive the fact that Murphy tried to contact his appellate counsel, filed two motions and wrote letters to the state district court trying to get his legal files, and court minutes reflect that his attorney did indeed go inactive and move out of state. There is no right to appellate counsel in Nevada in non-capital state postconviction habeas proceedings. *Brown v. McDaniel*, 331 P.3d 867, 869 (Nev. 2014). But in this situation the state district court's refusal to appoint counsel for Murphy's state habeas action meant that he had no assistance in attempting to obtain his legal files. Murphy also provides support for his contentions that he has difficulty writing due to a permanently injured hand and

that he suffered from uncontrolled diabetes. It is undisputed that the NDOC prisons were generally subject to frequent lockdowns during the peak of the Covid-19 pandemic. The court finds that extraordinary circumstances prevented Murphy from timely filing his federal petition. His actions of filing motions, trying to contact his attorney, and seeking proper medical treatment show he pursued his rights with reasonable diligence. Murphy is entitled to equitable tolling of the AEDPA statute of limitations, and his federal petition is deemed timely.

### C. Exhaustion

Next, respondents argue that all the grounds Murphy raises are unexhausted. ECF No. 44 at 6–8. A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthy*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion. *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan*, 513 U.S. at 365; *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court,

be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose*, 455 U.S. at 520). "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hiivala*, 195 F.3d at 1106. However, citation to state case law that applies federal constitutional principles will suffice. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff*, 582 F. Supp. 455, 458 (D. Nev. 1984).

### i. Grounds 1 and 2 are exhausted.

Murphy contends in ground 1 that the state district court violated his Fifth, Sixth, and Fourteenth Amendment rights when it refused to sever his trial from his co-defendant Jorge Mendoza's trial. ECF No. 21 at 11-14. Respondents assert that Murphy never argued the severance issue as a claim of a federal constitutional violation. ECF No. 44 at 6-7. Murphy argued on direct appeal that the failure to sever violated his federal due process rights. *See, e.g.*, Ex. 112 at 41, 50-51 (discussing *In re Winship*, 397 U.S. 358, 362 (1970) and citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Ground 1 is exhausted.

Murphy claims in ground 2 that the state district court violated his Fifth, Sixth, and Fourteenth Amendment rights when it allowed Summer Rice to testify notwithstanding the prosecution's late disclosure of Rice as a witness. ECF No. 21 at 15–17. Respondents contend that Murphy raised this in state court as purely a matter of state procedural law. ECF No. 44 at

7. On direct appeal Murphy argued that he was deprived of the ability to effectively cross-examine Rice based on the late disclosure, which violated his federal right to a fair trial. *See* Ex. 112 at 39–40 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Ground 2 is exhausted.

### ii. *Ground 3 is unexhausted, and the court defers a decision on whether it is procedurally barred to the merits adjudication.*

Murphy asserts in ground 3 that his trial counsel was ineffective for waiving cross-examination of Mendoza in violation of Murphy's Fifth, Sixth, and Fourteenth Amendment rights. ECF No. 21 at 17–18. He argues that counsel could have cross-examined Mendoza on his motives for testifying, his untruthful statements to police, and the inconsistencies between his testimony and cell phone records. In his state postconviction petition, Murphy presented to the state courts the claim that counsel was ineffective for failing to cross-examine Mendoza because he should have asked Mendoza whether Murphy drove the vehicle to the victims' house, and whether Murphy participated in the planning and commission of the crimes. *See* Exs. 122, 135, 140. The state and federal claims do not rely on the same operative facts and legal theory. The state claim goes to whether Murphy is innocent of the crimes. The federal claim focuses on Mendoza's credibility. Ground 3 is unexhausted.

Murphy argues that if he did not fairly present ground 3 to the state courts it is nevertheless technically exhausted because the claim would now be procedurally barred from state court review. *See* NRS 34.726, 34.810. "Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts, but the state courts disposed of the claim on procedural grounds, instead of on the merits. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). Federal habeas review of procedurally defaulted claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

The United States Supreme Court established a narrow exception to procedural default—a federal court is not barred from reviewing a substantial claim of ineffective assistance

of trial counsel if, during the initial collateral state court review, petitioner had no counsel or counsel was ineffective. *Martinez v. Ryan*, 566 U.S. 1 (2012). Here, Murphy had no counsel in his state postconviction habeas proceedings, which provides good cause to overcome the state procedural default. *See* Exs. 122, 135. The prejudice prong—whether the ineffective assistance of trial counsel claim is substantial—is intertwined with the merits of that claim. The court therefore defers a determination of whether ground 3 is procedurally defaulted to the adjudication of the petition on the merits.

### III.   Conclusion

IT IS THEREFORE ORDERED that respondents' motion to dismiss **[ECF No. 44] is DENIED** as follows:

- Grounds 1 and 2 are exhausted, and
- A decision on whether ground 3 is procedurally barred is deferred.

IT IS FURTHER ORDERED that respondents have until September 11, 2024 to file an answer to the petition. The answer must contain all substantive and procedural arguments for all grounds of the petition and comply with Rule 5 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. § 2254.

IT IS FURTHER ORDERED that petitioner will then have 45 days from the date of service of respondents' answer to file a reply.

Dated: July 11, 2024

_____
Cristina D. Silva
United States District Judge